**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**BARBARA MARIE FRANTZ,**

    **Plaintiff,**

    v.                                                                                CASE NO. 23-3246-JWL

**STATE OF KANSAS, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Topeka Correctional Facility ("TCF") and proceeds in forma pauperis. On December 5, 2023, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 13) ("MOSC") directing Plaintiff to show good cause why her Amended Complaint (Doc. 6) should not be dismissed or to file a second amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed a Second Amended Complaint (Doc. 15), then a Third Amended Complaint (Doc. 16). This matter is before the Court for screening of the Third Amended Complaint as the operative complaint. The Court's screening standards are set forth in the MOSC.

**I. Nature of the Matter Before the Court**

    **A. First Amended Complaint**

Plaintiff alleged in her original Amended Complaint that she was sexually assaulted at the Leavenworth County Jail ("LCJ") in July of 2017. (Doc. 1-1, at 28.) She claimed that she did not receive adequate medical care for the three and a half years she was at the LCJ. Plaintiff alleged that she is now suffering skull swelling as a result of a skull fracture that she sustained in the attack. When she arrived at TCF, she attempted to pursue a Prison Rape Elimination Act ("PREA") claim

1

against LCJ personnel. Plaintiff stated that she also "continued to report she was whistleblowing on a large number of medical practitioners and of KU Hospital's medical error causing Ms. Frantz's organ damage." (Doc. 6, at 13.) She further stated that she filed a civil rights complaint in this Court in May, 2021, which was dismissed, and she alleged that she has been denied due process in state habeas and criminal cases.

Plaintiff contended she is in imminent danger of serious physical injury from her skull swelling. She also stated that she has "knots" throughout her body, which are "intentionally-knowingly being concealed in [her] medical chart and . . . imaging reports." *Id.* at 14. Plaintiff asserts that these conditions are life-threatening and that she needs to see a specialist. *Id.* She believed that she is "full of tumors." *Id.* at 15. Plaintiff claimed that a Centurion medical provider at TCF, Dr. Jena Lee, has entered orders for her to have ENT and GI consults, as well as an MRI of her abdomen. *Id.* at 16. Plaintiff alleged that these orders are not being followed "for reasons of protecting the enormous amount of professionals under investigation for the conspiracy to murder Ms. Frantz, as a full disclosure of medical diagnosis will [be] sure to bring about the most serious federal and state criminal charges." *Id.*

Plaintiff asserted a claim for violation of the Eighth Amendment due to deliberate indifference to her serious medical needs. It is not clear if she was asserting additional claims. She mentioned the failure to respond adequately to her grievances, due process violations in connection with her prior legal actions, and the violation of numerous internal policies and procedures of the Kansas Department of Corrections ("KDOC").

Plaintiff named the following defendants: the State of Kansas; Jeff Zmuda, Secretary of Corrections; Gloria Geither, Warden of TCF; David McCabe, Acting Warden of TCF; Ryan Shanks, EAI officer, TCF; Joshua Winkleman, EAI officer, TCF; Cathy Robinson, Director of

Health Care Services, KDOC; Centurion, contracted medical provider for TCF; Michelle Calvin, Centurion Medical Services Administrator; Jena Lee, M.D., Centurion; April Farrell, APRN, Centurion; Sara Hart, APRN, Centurion; Gregory Erb, M.D., Centurion; Scott Logan, M.D., Global Diagnostic Services; Francisco Correa, M.D., Cotton O'Neil Endocrinology; Andrew Dedeke, Sheriff, Leavenworth County; Michelle (LNU), Physician Assistant, LCJ; Melissa Wardrop, LPN, LCJ; and Jane and John Doe, Leavenworth County Sheriff officers involved in operating the LCJ on 7/24-25/2017. Plaintiff sought relief in the form of compensatory and punitive damages, as well as declaratory and injunctive relief. *Id*. at 9.

### B. MOSC

The Court found in the MOSC that: the allegations that Plaintiff makes in the Amended Complaint are very similar, if not identical, to allegations she raised in a previous lawsuit before this Court, making it repetitive and duplicative of Plaintiff's previous lawsuit and subject to dismissal as frivolous; all of Plaintiff's allegations involving the Leavenworth County Jail occurred outside the applicable two-year statute of limitations, as well as some of Plaintiff's allegations about medical care and other events at TCF; many of the defendants were subject to dismissal because Plaintiff failed to allege facts in the Amended Complaint showing the personal participation of each defendant in the alleged constitutional violations; mere supervisory status is insufficient to create personal liability; Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim because there is no constitutional right to an administrative grievance system; the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment; Defendant Centurion is subject to dismissal because Plaintiff failed to allege the requisite causative custom or policy; Plaintiff's allegations showed her disagreement with medical personnel

3

regarding the proper course of treatment but failed to show that the defendants disregarded an excessive risk to her health or safety or that they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and allegations that the defendants violated Kansas regulations or prison policy fail to state a federal constitutional violation under § 1983.

The Court granted Plaintiff an opportunity to file a second amended complaint in which she names proper defendants and seeks proper relief regarding her medical claims. The Court cautioned Plaintiff that she must also comply with Fed. R. Civ. P. 8's pleading standards.

### C. Third Amended Complaint

In response to the MOSC, Plaintiff filed a Second Amended Complaint (Doc. 15) and then a Third Amended Complaint ("TAC") (Doc. 16). The TAC is the operative complaint, is 53 pages long and references the over 300 pages of exhibits filed with the original complaint. In addition, Plaintiff has filed 50 more pages of exhibits. The TAC continues to name all of the same defendants, with the exception of changing the State of Kansas to the Kansas Department of Corrections ("KDOC").

Plaintiff continues to make the same primary claim in the TAC: an Eighth Amendment deliberate indifference to serious medical needs claim. She also makes a Due Process claim based on the defendants allegedly ignoring her grievances regarding her medical care, and a First Amendment claim alleging a violation of her "right to file a grievance report against prison official."

## II. Discussion

Plaintiff's TAC fails to address the deficiencies noted in the MOSC. Plaintiff has made no response to the finding that her claims are duplicative of claims she previously brought before this

4

Court and the Tenth Circuit.  "When a pro se litigant files complaints that are repetitive, duplicative of other filings, without merit, or frivolous, he abuses the district court process.  [R]epetitious litigation of virtually identical causes of action may be dismissed under [28 U.S.C.] § 1915 as frivolous or malicious."  *Childs v. Miller*, 713 F.3d 1262, 1265 (10th Cir. 2013).  The TAC is subject to dismissal as legally frivolous.

In addition, Plaintiff's claims based on grievance responses and the filing of grievances fail to state a constitutional claim, as previously explained.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

In the MOSC, the Court found that Plaintiff's medical claims show a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment and do not constitute cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976); *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968)

(prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983). Nothing in the TAC alters that conclusion.

Plaintiff has clearly received medical care while incarcerated.[1] In response to her September 21, 2021 grievance, the Health Service Administrator responded indicating that since Plaintiff's incarceration at TCF she has been seen a minimum of 37 times in nursing sick calls, she has been scheduled for offsite appointments, and she has refused at least one of the appointments. (Doc. 1-4, at 89.) Plaintiff also clearly disagrees with her medical providers. An October 31, 2023 memorandum prepared by the Health Services Administrator states, "She continues to be non-compliant with recommended medical treatment and focuses on concerns for which there is not current clinical evidence." (Doc. 1-7, at 8-9.)

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation omitted). The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[1] *See, e.g.*, Doc. 1-4, at 57 (referencing a 2-hour visit with Dr. Erb on July 12, 2023); Doc. 20, at 6-7 (grievance response dated December 18, 2023 reviewing and listing Plaintiff's studies, tests, and diagnoses).

recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

As the Court previously held in the MOSC, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. Plaintiff's allegations do not show a lack of medical care, but rather show Plaintiff's disagreement regarding both her diagnoses and the proper course of treatment. Plaintiff has failed to show that Defendants disregarded an excessive risk to her health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff's claims suggest, at the very most, negligence, and are subject to dismissal.

Plaintiff has failed to cure the deficiencies set forth in the MOSC. Plaintiff has failed to show good cause why this case should not be dismissed for failure to state a claim.

**III.  Pending Motions**

Plaintiff has filed three Motions for Order to Show Cause for a Preliminary Injunction (Docs. 17, 18, and 23), a second Motion to Appoint Counsel (Doc. 19), and a Motion for Hearing (Doc. 22).

Plaintiff's motions for injunctive relief ask for the Court to enter an order requiring her behavioral health visits be held in the behavioral health suite rather than the medical clinic (Doc. 17, at 2); allowing her to be excepted from the rule that inmates may have one box for legal

documents (Doc. 18, at 4); and preventing manual blood pressure readings on Plaintiff (Doc. 23, at 1).

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).  "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).  Plaintiff must establish that "the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman,* 348 F.3d. at 1189.  Plaintiff's allegations do not establish that *great* injury is certain and not theoretical, or more than merely feared as liable to occur in the future.

Here, Plaintiff has not demonstrated a likelihood of success on the merits such that her right to relief is clear and unequivocal and has not demonstrated a likelihood of imminent irreparable harm.  For these reasons, the Court finds that Plaintiff has not met her burden to make a heightened showing that entry of a preliminary injunction is warranted.

Plaintiff's Second Motion to Appoint Counsel (Doc. 19) is also denied.  As previously

8

explained, there is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).

Because the Court concludes that this case is subject to dismissal, the motion is denied. For the same reason, Plaintiff's Motion for Hearing is denied.

**IT IS THEREFORE ORDERED** that this matter is **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's pending motions (Docs. 17, 18, 19, 22, and 23) are **denied**.

**IT IS SO ORDERED**.

**Dated February 26, 2024, in Kansas City, Kansas.**

                                       **S/ John W. Lungstrum**
  &nbsn;                                     **JOHN W. LUNGSTRUM**
                                         **UNITED STATES DISTRICT JUDGE**